Filed 5/5/25  P. v. Negrete CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B334887 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA039526) |
| v. | |
| SALVADOR NICOLA NEGRETE, IV, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Reversed and remanded.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

In 1999, defendant Salvador Nicola Negrete, IV, was convicted of second-degree murder and attempted voluntary manslaughter for crimes that he committed when he was 20 years old.  He was sentenced to an aggregate term of 50 years to life in prison.  In 2023, defendant filed a petition for recall and resentencing under Penal Code[1] section 1170, subdivision (d)(1)(A) (section 1170(d)(1)(A)), which permits juvenile offenders sentenced to life without the possibility of parole (LWOP) to petition for recall and resentencing under certain circumstances.  The trial court summarily denied the petition on the grounds that defendant had not been sentenced to LWOP and was thus ineligible for resentencing.  We reverse and remand for further proceedings.

# II.  BACKGROUND

On February 25, 1999, the Los Angeles County District Attorney charged defendant in a second amended information with the murder (§ 187, subd. (a), count 1) of Johnny Gutierrez, and the attempted premeditated murder (§§ 664, 187, subd. (a), count 2) of Marcus Gutierrez.

On March 29, 1999, a jury found defendant guilty of second degree murder and attempted voluntary manslaughter (§§ 664, 192, subd. (a)).  The jury found true allegations that defendant personally used a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally

---

[1]     Further statutory references are to the Penal Code.

discharged a firearm which caused great bodily injury or death (§ 12022.53, subd. (d)).  For count 2, the jury also found true an allegation that defendant personally inflicted great bodily injury upon Marcus Gutierrez.  (§ 12022.7, subd. (a).)  The trial court sentenced defendant to an aggregate term of 50 years to life.

On June 30, 2023, defendant filed a motion for recall and resentencing pursuant to section 1170(d)(1)(A) and *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*).  He conceded that he was not under the age of 18 when he committed his crimes but argued that he was nonetheless a "youth offender" because his "youth and immaturity" were "further exorbitant [*sic*] due to [his] early drug abuse, starting at adolescence, stunting [his] emotional, physical and psychological growth . . . [c]ausing all the hallmarks of youth to be prolonged."  In support of his petition, defendant submitted evidence of achievement in educational pursuits that does not suggest an intellectual disability including his GED certificate, a certificate of career readiness from Baylor University, an Associate in Arts degree in Social and Behavioral Sciences, and Associate in Science degree in General Business from Coastline Community College.  He also submitted copies of letters that he had sent to the families of his victims and the community of La Puente, where the crimes occurred.

On August 25, 2023, the trial court summarily denied the petition, stating that "defendant was not sentenced to imprisonment for life without the possibility of parole or its functional equivalent pursuant to [*Heard, supra,*] [83] Cal.App.5th 608.  The defendant was sentenced on July 28, 1999[,] to 40 years to life with the possibility of parole.[2]  In addition, the defendant was eligible for parole and had his first

_____

2      As noted, defendant was sentenced to 50 years to life.

3

parole hearing on December 15, 2022[,] and was denied parole for 3 years. His next parole suitability hearing is set in December 2025." (Emphasis omitted.) Defendant timely appealed.

## III. DISCUSSION

We review the trial court's denial of a petition for recall and resentencing of abuse of discretion. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863–864.) A court abuses its discretion when it bases its decision on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) Whether a defendant is eligible to petition for a recall and resentencing under section 1170(d)(1)(A) is a question of statutory interpretation that we review de novo. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

Section 1170(d)(1)(A) provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Although section 1170(d)(1)(A) thus applies, by its own terms, to those juvenile offenders sentenced to "imprisonment for life without the possibility of parole," the Attorney General does not dispute that under *Heard, supra*, 83 Cal.App.5th 608, "juveniles sentenced to the functional equivalent of life without parole" are "eligible to petition for resentencing under section 1170, subdivision (d)(1)." (*Id.* at p. 633.) The Attorney General also does not dispute that defendant's 50 year to life sentence is the functional equivalent of LWOP. Thus, the Attorney General impliedly concedes that the

4

court misapprehended the law when it denied defendant's petition.

The Attorney General nonetheless urges us to affirm the trial court's ruling on a ground the court did not consider, namely, that notwithstanding defendant's contention on appeal that his intellectual disability rendered him the functional equivalent of a juvenile, defendant was an adult at the time he committed his offenses and therefore was not entitled to relief in any event. He also contends that defendant forfeited his argument on appeal by failing to raise it below and that it fails on the merits.

Because the trial court made no findings regarding defendant's intellectual abilities at the time of his offense, the record on this issue is undeveloped. Defendant cites to a 1999 psychological evaluation prepared by Dr. Ronald Fairbanks, in connection with a hearing to determine whether defendant was competent to stand trial. That report reflects that defendant had a verbal IQ score of 63 and a performance IQ of 62. It was "the examiner's diagnostic impression that this young man is mildly retarded with intellectually and adaptively [*sic*]." The record includes reference to another psychological report, prepared by Dr. Kaushal Sharma, which is not included in the record on appeal. Following the court's review of the two reports, the court declared that defendant was competent to stand trial within the meaning of section 1368. (See § 1367, subd. (a) ["A defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner"].)

5

Because the parties agree that the trial court erred when it concluded that defendant had not been sentenced to the functional equivalent of LWOP, we conclude that the best course here is to reverse the court's summary denial and remand for further proceedings where the parties can further develop the record on defendant's intellectual abilities at the time of his offense. Moreover, the trial court should appoint counsel for defendant, if he so requests. (See *Salas v. Cortez* (1979) 24 Cal.3d 22, 33.)

## IV.   DISPOSITION

The trial court's summary denial of defendant's petition is reversed and remanded for further proceedings.  On remand, the court is ordered to appoint counsel to defendant, if defendant so requests, and allow the filing of an amended petition that may raise defendant's contention, raised on appeal, that he suffered from an intellectual disability such that he was the functional equivalent of a juvenile at the time he committed his crimes.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

7